Case number 255370, Anthony Warren v. Chester County TN. Argument not to exceed 15 minutes per side. Mr. Barnett, you may proceed for the appellant. Good morning. Good morning. May it please the court, my name is Charles Barnett and I along with my co-counsel represent Anthony Warren. At this time I'd like to request three minutes for rebuttal. Very well. This is a case about retaliatory intent. Anthony Warren was an employee of Chester County and he reported to his supervisor that he had not been paid for every hour that he worked. He had a phone call on June 10th with his supervisor about these hours and then on that following Monday he went into work, had a conversation and further conversation with his supervisor, Amber Green, about his hours. Told her that he thought it was illegal for him not to be paid every hour that he worked and then she told him that she would pay him for those hours and that as of now he no longer had a job. The district court erred two reasons. First, the district court erred by concluding that Anthony Warren failed to establish through direct evidence his retaliation, specifically through the recording of his termination. Second, the district court erred by finding during its McDonnell Douglas analysis that there was no evidence that the county's fourth protectual reason for termination was false. Mr. Barnett, if I could sort of cut to the chase of something that I'm interested in here, and I'm not saying this is determinative one way or the other, but is there anything in the record that refutes the county's contention that they would have fired him two weeks later? Yes, Your Honor. What evidence are you relying on? There's a number of pieces of evidence that refute that. First, Amber Green in her deposition testimony says that she wouldn't have fired him. She said she would have fired him anyway. She hadn't fired him because of the budget reason, but she would have fired him anyway. So that doesn't help you. That suggests that he was going to be fired anyway. So what evidence do you have? Because your client has admitted he doesn't have any evidence about the financial condition that indicates whether he would or wouldn't have been fired. So I would point to the temporal proximity. There's both the temporal proximity of when he was between... The temporal proximity has got nothing to do with what would have happened in two weeks. Well, let me just assume, because I don't want to waste all your time on this, or our time. So if he would have been fired two weeks anyway, which I will submit to you that's what the record seems to show, I'm just trying to figure out what's left in this case. What are you arguing about? Because he got a job paying more money the next day. Yes, Your Honor. So if we send this back, which is what you want, what's the issue? The issue is the retaliation, is that they fired him for complaining. Okay, let's assume they did. Let's assume they did. So what are you going to get out of it? What are you going to get? He doesn't have any damages. Well, Your Honor, for Anthony Warren, this is more than about money. It's about the court recognizing that... to give you money. What's the theory? Retaliation is that... Retaliation has to come with damages. What's your theory of damages? He's got no lost wages. He has no lost wages, but he has... You can't get emotional damages on a claim like this, I don't think, can you? Off the top of my head, I'll be honest, Your Honor, I have not reviewed anything about remedies under the FLS. Okay, so you have no idea what damages you're going to get, but your client is understandably mad, so he's told you to go ahead, and you don't know what you're going to do next. Well, Your Honor... His damages flow from the fact that he was... I don't know that the proof will show that he was paid for all of his overtime when we get in front of a jury, first off. Second... So what does that amount to? It is a small amount of money, but that's why this is... You waste enough time. Thank you. You've answered my question. Your Honor, if I could... Are you suing for that overtime, that alleged overtime here? I can't remember. I think all we have remaining, Your Honor, are the retaliation claims. But I would point to... You're not suing for the overtime. There's nothing in there that says you're suing for overtime. I would point, Your Honor, to the fact that when Anthony Warren... He was hired, and in the process, in the term of his employment, he received a raise in his pay. And the testimony from Amber Green was that they had an awareness of the alleged budget issue before they hired him, and that they point to this hearing that occurred two weeks after he was fired. So if you look at the timeline of his employment, they had an awareness on the front end of some sort of budget issue. They gave him a raise, and then when they fired him, they mentioned nothing about the budget. The sole discussion was whether or not he had been paid for all of his overtime hours, all the hours that he had worked. When we talk about sort of the pretext analysis, do you agree with the general proposition that an employer can supplement his reasons for the termination? Certainly, Your Honor. An employer can supplement their reasons for their termination. Why wasn't this a supplementation? They started here, and then they went to the budget. Well, Your Honor, because this occurred after the defense had done their initial disclosures and after the defense had done their discovery answers. And there was, at mediation, a surprise recording that was produced that blew away their third reason for why they fired Mr. Warren. And so the fact that these narratives have shifted over time is significant, and that's something that a jury should be able to look at in determining whether or not there was retaliatory intent when Anthony Warren was fired. Getting back to Judge McKeague's question, even if you technically have a claim here for retaliation, you need damages, don't you? And if you don't have damages, doesn't the claim fail? No, Your Honor. Tell me why not. Well, because a jury could award nominal damages. You're entitled to nominal damages for retaliation for the FL, whatever the statute is? The FLSA. I believe so, Your Honor, but yet again, I could be wrong because I have not done any review about remedies. So does this case come down to you want nominal damages so you get attorney fees so you get paid? Is that what we're dealing with here? Your Honor, I would submit that what we're dealing with is that Anthony Warren was fired, and in his deposition testimony, he testifies at length about his discussions with the mayor after he was fired, how this affected him. But he's not entitled to emotional distress damages, I don't think, for retaliation here, is he? I think he might be, Your Honor. I don't know what's in the pleadings off the top of my head about that. Are you suing for mental anguish damages in your complaint? I would have to look at the complaint to tell you exactly what it says. Has this case gone to mediation? Yes, Your Honor. Would there be any chance of success if we referred it to mediation again? Your Honor, if we could settle this, we'd be interested in it. I don't know. I can't speak for the other side. I know. I'm asking about your side, though. Presumably, yes. You would be unamenable to it? Yes, Your Honor. All right. I don't have any further questions. Do you, Judge McKee? Do you have other things to say? I'll waive the rest of my time. All right. Anything further, Judge Mathis? Thank you. You'll have your rebuttal, though. Thank you, Your Honor. I don't want to waive that. No. You'll have your three minutes rebuttal. All right. Let's hear from Chester County. Good morning. Good morning, Your Honor. Good morning. May it please the Court. My name is Chris Hayden, and I am here on behalf of Chester County. And to hit on some points that the Court has already addressed. We have unrebutted proof that there was a $200,000 budgetary shortfall coming in on July 1, that the Chester County Solid Waste Department, which is the entity in which the plaintiff was employed, was having to act. How does that weigh in when, I forgot the lady's name, I think it was Green. Yes, Ms. Green. I think she didn't fire him for the budget reasons. That wasn't why she fired him. So how does the fact that two weeks later something would happen, how does that weigh into the analysis here? Your Honor, the testimony was pretty clear from our reading throughout, because as the Court knows, Ms. Green, even though at the time of this lawsuit, she actually no longer worked for the county anymore. She'd moved on to another employment. She works for the State of Tennessee now. But regardless of that, we designate her as the Rule 30 rep for the county. So she was deposed not once but twice. Once her individual capacity, once as a Rule 30 rep for the county. And in both of those depositions, we believe she was quite clear that the reason that she ultimately terminated the plaintiff was twofold. The budgetary reason, she knew that she was going to have to let him go at latest by July 1 when that new fiscal year budget came in. But that the continued obscene outburst influenced the timing of that and solidified that two weeks before it had to have been. So the record doesn't indicate that she testified that the budget cuts weren't the reason why she terminated him that day. I thought I read that in her deposition. Your Honor, as we cited too in our brief numerous times in the props to the plaintiff in having some very creative, very specific citations, where a sentence where she would say, I fired him that day because he called me a bad word. But then the line before, the line after, the context, she would say, no, it was all the budget and his obscene outburst. Well, that's really not her testimony. I mean, her testimony, they asked her if he was fired because of budget reasons. And she says, this is a quote, I didn't let him go for that reason, but I would have let him go anyway two weeks later because we didn't have the money to pay him. I would have let him go two weeks later. I mean, she specifically says that at the time of termination, the budget concerns were not the reason. I mean, how do you get around that? I mean, I'm just reading her admission and her deposition. Yes, Your Honor. And I would point you to her testimony before that and her testimony after that. She doesn't contest, she doesn't contradict that. We've read it before and after. And nobody ever goes, I guess it would be you to go back and say, well, you implied earlier that you didn't fire him because of budget reasons, but were budget reasons part of the reason. You never asked her that question. So she never corrected what Judge Griffin just read to you. And the problem that I have, following up on Judge Griffin's questions, is I thought Judge Breen did a pretty good job until he got right up to the second to the last page of the opinion, where then he basically says the plaintiff doesn't put forth any evidence about he was fired for budgetary reasons and never discusses the exact testimony that Judge Griffin just read to you. So I don't see how we get around remanding this back for that problem in the opinion. Whether there are damages or not, you can talk about that later if you want to. Yes, and Your Honor, it's... So how do we deal with that? And again, it's our position, obviously, that Judge Breen got it right and that Judge Breen... Judge Breen doesn't even talk about what I'm just asking you about. Yes, Your Honor, but certainly we would put forth that Judge Breen read the transcripts of the deposition testimony that we filed with the court and that from the entire context of what Ms. Green said, that it was all in one, that she hired him knowing that she was hoping that the tax receipts would be different and that her budget would be better by the time July rolled around. But he was hired as a part-time at-will employee with no expectation of continued employment and unfortunately that budget did come to be a reality by July 1. And she knew that as those tax receipts for those property taxes and all those things didn't fill in the gap, that they were going to have to make some cuts. And as the most recently hired employee, he was the first to go in a reduction of force. Ms. Green knew that, his entire employment. And of course, our position being that his continued outburst and filthy language didn't help his cause either in remaining employed there for as long as he could have. Okay, let's go to the issue of damages. I mean, it doesn't look like they do have any damages here. But are they entitled to nominal damages or retaliation in this context? Certainly our position that they're not. I don't have the case. You don't have any authority that they're not? I mean, normally in statutes like this, I think you're entitled to nominal damages. I think you're also entitled to attorney fees. And we're trying to figure out why the case is before us. Right. And why we're spending our time on it. But as far as I can tell, it's only for nominal damages and attorney fees. But I think that's valid claims. I mean, you have no evidence or no argument to the contrary, I guess. I wasn't here prepared today to talk about nominal damages. Okay, well, we are. Let me be more specific for you, just to help you out. What he seeks is back pay. Didn't lose any pay. That's correct, Your Honor. Lost benefits. Did he lose any benefits? Do you know what the benefits were in the new employer? Your Honor, he was actually overpaid. The testimony is he admitted that he was paid everything that he was owed by the county. And indeed, the testimony is that he was accidentally overpaid a few days at his termination. Did he lose any benefits? No, Your Honor. Pecuniary losses. Is there any evidence of those? No, Your Honor. Compensatory damages. I don't know what that is, but any evidence of that you're aware of? No, Your Honor. Then he says punitive damages. I don't know. Did he get punitive damages on one of these claims? Not to my knowledge with the shilling, Your Honor. Okay. So maybe he could get punitive damages. We're not sure. And then there's the catch-all at the end. Further general legal and equitable relief, so on and so forth. So you can't help us out on what he might have by way of damages in theory. We have no clue. As the court pointed out, I understand that attorneys want to get paid, and we assume that's why we're here. He's entitled to compensatory damages, right, which is like emotional distress, that type of thing. He would be entitled to it if he can prove it, right? It was our understanding that emotional damages are not available in these types of cases. I certainly could be wrong, Your Honor. Compensatory damages. In retaliation cases, you don't think they're available? I did not think so under this theory, Your Honor. Okay. I asked the other side. This case was earlier referred to mediation, which was unsuccessful. I mean, since there's not a lot of damages here, and they may have a viable claim in view of Green's deposition testimony, would sending this to mediation at this point be at all helpful in your view? To be honest, Your Honor, I don't think so, and I'll tell you why. As I've pointed out in my brief, and I certainly could be mistaken about this, but it's my understanding that federal rules of evidence, local rules of West Tennessee district court, local rules of this court state that the contents of a mediation are confidential, and that's obviously to encourage the parties to be forthcoming and to work with candor towards a solution. The alleged contents of the court-ordered mediation earlier in this case has been brought up allegedly time and time again by the plaintiffs to try to put forward their theory. It's my understanding that's in complete violation of all the confidentiality rules, confidentiality rule they signed. I really don't care about that. I just care about at this point, and you don't think that it would be at all helpful to mediate? My client is gun-shy about mediating at this point with this plaintiff and this counsel and feel like they can't disclose or really participate in case it doesn't settle down. Look, we can assure you that the mediator is not going to tell us whatever goes on in subsequent mediation. They don't have an opportunity to tell us, and if they do, we'll strike it and sanction them. So if you do mediate, it's going to be confidential. Yes. Is there a possibility of it being helpful in your opinion or not? I don't think so, Your Honor, for the reason that— Because you don't like them, you don't trust them. I'm not speaking for myself. My client is afraid that whatever they say then will attempt to be used again by the plaintiff, as they've already done in this litigation. It's your job to tell your client that that's not possible in terms of us hearing about it. Yes, and I'll certainly tell my client that. As we all know from our previous practice, clients don't always listen, do they? But I can certainly tell the client that. I can advise them that mediation is a good idea. That's fair enough. As to whether it's actually successful or not, I'm not going to stand up here and tell the court that I know that it will be, based upon the history of this case. Okay. Any other questions? Do you have other points to make? I can stand up here and talk. Oh, okay. I don't think it's necessary. Okay. All right. Thank you very much. We've got three minutes of rebuttal. Mr. Barrett?  Thank you, Your Honor. Just to return to the damages issue, one of the things I would point to is that punitive damages are available because this is retaliation, and there's his loss of reputation. In his deposition testimony, there's considerable testimony about this is a small town, that the people involved in this are people that they know, that Anthony Warren knows, and so after he was fired, he went and talked to the mayor, because he's concerned about why he was fired and his reputation in the town, and that was an upsetting thing to him. How do you quantify that, or did you all attempt to quantify it? I know it's ultimately up to the jury. We have not attempted to quantify that, Your Honor. One of the things I would say about this is that the nature of FLSA and that the people that are being protected by wage and hour time laws, they are people that generally are not coming from money, and so this is an important law that has to be enforced, and if the answer to that is, well, look, you can fire somebody for reporting that they haven't been paid every hour that you work, so long as on the back end you make it up and you point to a future budget meeting, that can't be the law. Thank you, Your Honors. All right, thank you very much. The case will be submitted.